# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

DEBORAH L. HALL,                                6:15-cv-00233-BR

       Plaintiff,                       OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

       Defendant.


**DREW L. JOHNSON**
1700 Valley River Drive
Eugene, OR 97405
(541) 434-6466

**KATHRYN TASSINARI**
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
(541) 686-1969

       Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**JANICE E. HEBERT**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1011


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**MARTHA A. BODEN**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075
(206) 615-3710

Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Deborah L. Hall seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Act.

This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a thorough review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

## ADMINISTRATIVE HISTORY

Plaintiff filed her application for DIB on July 15, 2011. Tr. 209.[1] Her applications were denied initially and on

---

[1] Citations to the official transcript of record filed by the Commissioner on June 17, 2015, are referred to as "Tr."

reconsideration.  An Administrative Law Judge (ALJ) held a
hearing on August 14, 2013, at which Plaintiff was represented by
an attorney.  Tr. 35.  A vocational expert (VE) also testified at
the hearing.  Tr. 35.

The ALJ issued a decision on September 4, 2013, in which she
found Plaintiff is not entitled to benefits.  Tr. 12-29.  That
decision became the final decision of the Commissioner on
December 14, 2014, when the Appeals Council denied Plaintiff's
request for review.  Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103,
106-07 (2000).

## BACKGROUND

Plaintiff was born on June 28, 1966; was 47 years old on the
date of the initial hearing; and has a high-school diploma with
one year of college education.  Tr. 209, 214.  Plaintiff has
prior relevant work experience as an office coordinator, medical-
office assistant, and housekeeper.  Tr. 27, 66-67.

Plaintiff alleges disability since December 10, 2009, due to
chronic pain, numbness in her limbs, bipolar disorder with
psychotic features, depression, sleeplessness, nausea, irritable
bowel syndrome, headaches, fatigue, and asthma.  Tr. 169, 213.
Plaintiff's date last insured was December 31, 2014.  Tr. 209.

Except as noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the

medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 17-21.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It

is "more than a mere scintilla" of evidence but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act. *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011). *See also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner

determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser,* 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout v. Comm'r Soc. Sec Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 404.1520(a)(4)(ii); *Keyser*, 648 F.3d at 724.

At Step Three the Commissioner must determine whether a claimant's impairments meet or equal one of the listed impairments and are so severe that they preclude substantial gainful activity. The claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R.

§ 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis when the ALJ is determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser,* 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser,* 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2.  If the Commissioner meets this burden, the claimant
is not disabled.  20 C.F.R. § 404.1520(g)(1).

**ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in
substantial gainful activity since December 10, 2009, her alleged
onset date.  Tr. 14.

At Step Two the ALJ found Plaintiff has the following severe
impairments:  Lumbago, post-traumatic pain syndrome in the upper
right extremity, bipolar disorder, post-traumatic stress
disorder, and chronic-pain syndrome.  Tr. 14.  The ALJ concluded
Plaintiff's history of clavicle fracture, asthma, and alcohol
abuse in reported remission are nonsevere impairments.  Tr. 14.

At Step Three the ALJ found Plaintiff's impairments do not
meet or equal the criteria for any impairment in the Listing of
Impairments.  Tr. 14-16.  In her assessment of Plaintiff's RFC
the ALJ found Plaintiff has the functional capacity to perform
light work as defined in 20 C.F.R. § 404.1567(b), including
lifting and/or carrying 20 pounds occasionally and 10 pounds
frequently in an eight-hour workday; standing and/or walking for
six hours and sitting for six hours in an eight-hour workday

except Plaintiff must be able to alternate between sitting and standing positions as needed while remaining on-task; occasionally pushing or pulling with her right side; occasionally climbing ramps or stairs, but never climbing ladders, ropes, or scaffolds; occasionally stooping, kneeling, crouching, or crawling; and frequently reaching with her dominant right hand. The ALJ, however, concluded Plaintiff cannot engage in any workplace driving and must avoid all exposure to hazardous machinery and avoid operational control of moving machinery and unprotected heights. The ALJ also found Plaintiff can understand anc carry out simple instructions and can have occasional interaction with co-workers and supervisors, but she cannot have any interaction with the public. Tr. 16-27.

At Step Four the ALJ found Plaintiff is capable of performing her past relevant work as a housekeeper. Tr. 27-28.

In the alternative, at Step Five the ALJ found Plaintiff is capable of performing other work that exists in significant numbers in the national economy, including work as an office helper, stock checker, and clerical checker. Tr. 28.

Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 29.


## DISCUSSION

Plaintiff contends the ALJ erred when she (1) failed to

provide legally sufficient reasons for discrediting Plaintiff's testimony; (2) failed to provide legally sufficient reasons for rejecting the opinion of examining psychologist Frank G. Lanham, Ph.D.; (3) failed to provide legally sufficient reasons for rejecting the opinion of Plaintiff's primary-care provider, Andrew Cornwell, M.D.; (4) failed to provide legally sufficient reasons for rejecting the opinion of examining physician DeWayde C. Perry, M.D.; (5) failed to provide legally sufficient reasons for rejecting the lay-witness testimony of Nigel Hall (Plaintiff's husband), Niki Hall (Plaintiff's mother), Mike Williams (Plaintiff's ex-husband), and Nichole Williams (Plaintiff's daughter); and (6) determined at Step Four that Plaintiff could perform her past relevant work as a housekeeper.

## I.  **Plaintiff's Testimony**

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986). *See also Spelatz v. Astrue*, 321 F. App'x 689, 692 (9th Cir. 2009).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

*See also Delgado v. Commissioner of Social Sec. Admin.*, 500 F. App'x 570, 570 (9th Cir. 2012).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id.* The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

At the August 14, 2013, hearing, Plaintiff testified she left her job in 2009 because she could no longer appropriately interact with her coworkers, customers, and supervisors. Tr. 42-43. Plaintiff also stated, however, that she told state unemployment services that she left that job because her "husband was transferred to Corvallis" and she "didn't want to drive that far" to reach her job in Albany, Oregon. Tr. 44.

Plaintiff testified she has struggled with bipolar disorder throughout her life and that she was formally diagnosed in her twenties. Tr. 45. Plaintiff testified she does not "interact with people very well" as a result. Tr.46. Plaintiff stated she has had difficulty remaining consistent with her bipolar

medication regimen because the medication "change[s] [her] personality," and she "miss[es] the manic sometimes."  Tr. 51. Plaintiff testified she feels like she is "invincible," becomes aggressive, and parties when she is manic.  Tr. 55.  Plaintiff also testified she suffers from auditory hallucinations and has difficulty with her memory and concentration.  Tr. 63-64.  In addition to her bipolar disorder, Plaintiff testified she has obsessive-compulsive disorder and, as a result, must have "everything perfect" before she leaves her house.  Tr. 59-60.

Plaintiff reported she also suffers from numbness and pain in her right arm and legs as a result of an all-terrain vehicle accident.  Tr. 46-48.  Plaintiff stated she cannot lift anything over three pounds and cannot lift her right arm over her head without pain as a result.  Tr. 49-50.  In addition, Plaintiff stated she cannot stand for more than 15 minutes without her legs becoming numb and has pain in her lower back with sitting "after a while."  Tr. 57.

In an Adult Function report dated September 20, 2010, Plaintiff stated she cannot stand or sit for long periods of time, cannot concentrate and does not have good memory, and suffers from rapid mood changes as a result of her bipolar disorder.  Tr. 201.  Plaintiff reported the pain and numbness result in her not being able to "move for long periods of time." Tr. 202.  Plaintiff stated she rarely goes outside because she

has difficulty walking and interacting with others.  Tr. 204.

Plaintiff indicated her conditions limit her abilities to lift,

squat, bend, stand, reach, walk, sit, kneel, climb stairs, see,

remember complete tasks, concentrate, understand, follow

instructions, use her hands, and get along with others.  Tr. 206.

Plaintiff reported she can only walk for 10-15 minutes before

resting and can only pay attention for 10-15 minutes.  Tr. 206.

As a result of her concentration and memory problems, Plaintiff

stated she must read instructions "several times" before she can

follow them, and must "write everything down."  Tr. 206.

The ALJ discredited Plaintiff's testimony because (1) she

had been able to work for "several years" with her physical and

mental conditions; (2) Plaintiff's receipt of unemployment

benefits (which requires a representation by the claimant that

she is willing and able to work) during the period of alleged

disability "undermines her contention that she is incapable of

working"; (3) Plaintiff made inconsistent statements regarding

her ability to drive; and (4) Plaintiff has been noncompliant

with her bipolar medications despite finding them to be helpful

in managing her symptoms.

The ALJ discredited Plaintiff's testimony that she has been

unable to work since 2009 on the basis that Plaintiff's

conditions are longstanding and she worked for several years with

those limitations.  As noted, Plaintiff testified she has had

bipolar disorder throughout her lifetime and in 2006 told an examining psychiatric mental-health nurse practitioner that she could perform her job "in spite of the symptoms that she [was] experiencing" as a result of her bipolar disorder. Tr. 280. Moreover, the bulk of Plaintiff's physical limitations stem from the all-terrain vehicle accident that Plaintiff suffered in August 2005. Tr. 277. After a review of the medical record as a whole, the Court concludes the ALJ could reasonably find there was insufficient evidence of exacerbation to support a conclusion that these conditions became disabling in 2009 or later in spite of the fact that they were not disabling while Plaintiff maintained employment.

Moreover, the ALJ reasonably concluded Plaintiff's receipt of unemployment insurance benefits during 2010 and 2011 (which, as noted, requires a representation by the claimant that she is willing and able to work) undermines her allegation that she was mentally and physically unable to work during those periods. Tr. 178.

Finally, the ALJ correctly found Plaintiff was noncompliant with her prescribed medications for bipolar disorder and that Plaintiff's functional capabilities are properly assessed based on Plaintiff's functioning while compliant with medication. Tr. 292, 325, 370, 372, 375, 396. Plaintiff's explanations for her noncompliance with bipolar medication alternately included

lack of financial means to adverse side effects to not needing
the medication to desiring the feelings associated with manic
periods.  Tr. 292, 372, 375.  Thus, the ALJ rejected Plaintiff's
testimony regarding the symptoms and alleged limitations arising
from her bipolar disorder.  The ALJ's reasoning is especially
convincing considering Plaintiff frequently reported improvement
in her symptoms when she was compliant with taking her
medications.  Tr. 301, 325, 369-70, 394-96.

Accordingly, on this record the Court concludes the ALJ
provided legally sufficient reasons for discrediting Plaintiff's
testimony.

## II.  __Medical Testimony__

As noted, Plaintiff contends the ALJ erred by failing to
provide legally sufficient reasons for rejecting the opinions of
Drs. Lanham, Cornwell, and Perry.

### A.   Standard

An ALJ may reject a treating or examining physician's
opinion when it is inconsistent with the opinions of other
treating or examining physicians if the ALJ makes findings
setting forth specific, legitimate reasons for doing so that are
supported by substantial evidence in the record.  *Taylor v.
Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011).
*See also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).
When the medical opinion of a treating physician is

uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010)(quoting *Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir. 1995)). The opinion of a treating physician is "given greater weight than the opinions of other physicians." *Kelly v. Astrue,* No. 10–36147, 471 F. App'x 674, 676 (9th Cir. 2012)(quoting *Smolen v. Chater,* 80 F.3d 1273, 1285 (9th Cir. 1996)).

A nonexamining physician is one who neither examines nor treats the claimant. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). *See also Garrison*, 759 F.3d at 1012. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Taylor,* 659 F.3d at 1233 (quoting *Lester*, 81 F.3d at 831). When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate her reasons for doing so with specific and legitimate reasons supported by substantial evidence. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). *See also*

*Simpson v. Astrue*, No. 10-cv-06399-BR, 2012 WL 1340113, at *5 (D. Or. Apr. 18, 2012).

**B.    Dr. Lanham's Opinion**

Dr. Lanham performed a psychodiagnostic evaluation on Plaintiff on April 18, 2013.  As part of this evaluation Dr. Lanham reviewed some of Plaintiff's medical records, conducted an interview with Plaintiff, and performed a "mental status examination."  Tr. 378.

After conducting the Montreal Cognitive Assessment, Dr. Lanham found Plaintiff demonstrated "mild to significant deficiencies" in cognitive function and concluded "[t]hese findings, although brief, suggest generalized deterioration in cognitive functioning."  Tr. 379-80.  After he conducted a lengthy interview with Plaintiff, Dr. Lanham found "[t]he evidence clearly supports the presence of Bipolar I disorder that has for many years created havoc in her life" and that Plaintiff "described features consistent with an "Obsessive-Compulsive Disorder."  Tr. 383.  Accordingly, Dr. Lanham concluded Plaintiff's "description of her historical and current functional status indicates an inability to persist with an adequate level of concentration, attention and appropriate social interaction in a work environment."  Tr. 383.

The ALJ gave Dr. Lanham's opinion little weight because Dr. Lanham's opinion regarding Plaintiff's ability to persist

with an adequate level of concentration and attention was based on Plaintiff's subjective reports; Plaintiff's performance on other mental-status examinations demonstrated she is capable of simple, routine work; and Dr. Lanham's opinion regarding Plaintiff's marked limitations in social interactions is undermined by Plaintiff's ability to tolerate going to the store. Tr. 25.

Dr. Lanham's opinion is contradicted by Dr. Smolen's opinion that Plaintiff has only mild impairments in memory, concentration, and understanding. Tr. 328. Accordingly, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Lanham's opinion. *See Garrison*, 759 F.3d at 1012.

Here the ALJ properly discounted Dr. Lanham's opinion because it was based in large part on Plaintiff's subjective self-report of her symptoms. Although Dr. Lanham conducted the Montreal Cognitive Assessment, his conclusions appear to be drawn largely from his clinical interview with Plaintiff. Tr. 383. Moreover, the ALJ correctly noted Plaintiff has performed better on other mental-status examinations, including the one performed by Dr. Smolen during which Dr. Smolen noted recent and remote memory were largely intact and Plaintiff was able to follow a three-step command. Tr. 328. The Court, however, does not find the fact that Plaintiff made trips to the grocery store is

inconsistent with Dr. Lanham's opinion that Plaintiff would have marked difficulties in social functioning.  Nonetheless, the Court concludes the other reasons provided by the ALJ constitute specific and legitimate reasons for discrediting Dr. Lanham's opinion.

Accordingly, on this record the Court concludes the ALJ did not err when she rejected Dr. Lanham's opinion because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**C.   Dr. Cornwell's Opinion**

Plaintiff next contends the ALJ erred when she failed to provide legally sufficient reasons for rejecting the opinion of Dr. Cornwell.

On December 19, 2011, Dr. Cornwell, Plaintiff's primary-care physician, opined Plaintiff is not employable "based on her past orthopedic injury with present chronic pain syndrome of the right upper extremity."  Tr. 346.  Dr. Cornwell further opined Plaintiff's unemployability was "[a]lso based on her psychiatric illness."  Tr. 346.

The ALJ assigned little weight to Dr. Cornwell's opinion because it was inconsistent with Plaintiff's ability to work for several years with those same conditions before quitting in 2009, was based on Plaintiff's subjective reports, was inconsistent with Dr. Cornwell's own examination findings, and contradicted by

the fact that Plaintiff's "medications are effective when taken as prescribed." Tr. 24. The ALJ was required to provide specific and legitimate reasons for rejecting Dr. Cornwell's opinion because it was contradicted by the examining opinions of Dr. Smolen and the physical examination of Dr. Perry. Tr. 324, 328. *See Garrison*, 759 F.3d at 1012.

As noted, the ALJ reasonably concluded Plaintiff's previous ability to work in spite of her longstanding mental and physical conditions is inconsistent with a present inability to work. Moreover, the ALJ also reasonably concluded Plaintiff's functioning while compliant with her medication regimen was greater than the level of functioning represented by Dr. Cornwell. Finally, the ALJ reasonably noted Dr. Cornwell's opinion was inconsistent with some of his own treatment notes, including notes that indicate Plaintiff has a greater degree of functioning while she is compliant with her medication regimen. Tr. 370, 396.

Accordingly, on this record the Court concludes the ALJ did not err when she rejected Dr. Cornwell's opinion because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**D.   Dr. Perry's Opinion**

As noted, Plaintiff contends the ALJ erred when she failed to provide legally sufficient reasons for rejecting the opinion

of Dr. Perry.

Dr. Perry conducted a physical examination of Plaintiff on October 18, 2011. Tr. 320. Dr. Perry noted Plaintiff sat comfortably; did not have difficulty getting on or off the examination table; and was awake, alert, and oriented during the examination. Tr. 321. Dr. Perry noted Plaintiff was "able to grip and hold objects securely to the palm by the last three digits, left greater than right" and was "able to grasp and manipulate both large and small objects with the first three digits, left much more so than the right." Tr. 323. Dr. Perry noted decreased grip strength in Plaintiff's right hand and "moderate tenderness" in her lumbar spine. Tr. 323-24.

After conducting his examination Dr. Perry concluded Plaintiff could stand and walk a maximum of four hours in an eight-hour day, but was not limited in the time she could sit when being able to alternate between sitting and standing. Tr. 324. Dr. Perry concluded Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. Tr. 324. Dr. Perry found, however, that Plaintiff "should not do any overhead reaching with the right" even though she does not have any limitations on reaching "out front" or handling, feeling, or fingering with her right hand. Tr. 324.

The ALJ assigned little weight to Dr. Perry's opinion because his opinion that Plaintiff could only stand and walk for

four hours in a workday is "not supported by his examination findings," is based at least in part on Plaintiff's subjective reports, and is inconsistent with the medical record. The ALJ also reasoned Dr. Perry's opinion that Plaintiff cannot frequently reach with her right arm is contradicted by the medical evidence and the findings of the nonexamining physicians. Tr. 23. The ALJ was required to provide specific and legitimate reasons for rejecting Dr. Perry's opinion because it was contradicted by the opinions of nonexamining physicians John Crites, M.D. Tr. 96-97. *See* also *Ryan*, 528 F.3d at 1198.

Although the ALJ's assessment of Plaintiff's RFC does not differ greatly from Dr. Perry's assessment, the ALJ, nevertheless, failed to provide specific and legitimate reasons for rejecting Dr. Perry's assessment in the respect that she did. The ALJ's rejection of Dr. Perry's opinion because it was based on Plaintiff's subjective symptom report is not persuasive in light of the fact that Dr. Perry's assessment was based on an extensive physical examination of Plaintiff. Moreover, the ALJ's general references that Dr. Perry's opinion was inconsistent with the medical record without further specification is not a legally sufficient reason for rejecting a physician's opinion.

Accordingly, on this record the Court concludes the ALJ erred when he rejected Dr. Perry's opinion because the ALJ failed to provide legally sufficient reasons supported by substantial

evidence in the record for doing so.

III. **Lay-Witness Testimony**

As noted, Plaintiff contends the ALJ failed to provide legally sufficient reasons for rejecting the testimony of Nigel Hall, Niki Hall, Mike Williams, and Nichole Williams.

When determining whether a claimant is disabled, the ALJ must consider lay-witness testimony concerning a claimant's limitations and ability to work. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). If the ALJ wishes to discount the testimony of lay-witnesses, he "must give reasons that are germane to each witness." *Id.* (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). *See also Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)(improperly rejected lay-witness testimony is credited as a matter of law).

Although the ALJ's reasons for rejecting lay-witness testimony must be "specific," *Stout v. Comm'r, Social Sec., Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006), the ALJ need not discuss every witness's testimony on an individualized basis. *Molina*, 674 F.3d at 1114. "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id. See also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

Nigel Hall submitted a Third Party Function Report dated

August 25, 2011, and a letter dated July 30, 2013, in which he describes Plaintiff's physical and mental limitations. Tr. 229-36, 271. In his Third Party Function Report, Nigel Hall stated Plaintiff has constant pain in her shoulder, back, and on the right side of her body to the extent that there are times when she cannot walk and she drops items that she is carrying. Tr. 229. Nigel Hall reported Plaintiff has numbness in her right arm and has difficulty raising that arm above her head. Tr. 229-30. Nigel Hall further stated Plaintiff has had increasing social limitations because she is "in pain constantly," "becomes angry easily," and frequently suffers from depression and manic symptoms on account of bipolar disorder. Tr. 233. In his letter dated July 30, 2013, Nigel Hall also described specific instances in which Plaintiff has suffered from acute bipolar symptoms including suicide attempts and other instances in which Plaintiff's physical limitations have caused difficulties in her activities of daily living. Tr. 271.

Niki Hall, Plaintiff's mother, submitted a letter dated May 13, 2013, in which she described Plaintiff's lifelong mental-health difficulties. Tr. 264-65. Niki Hall stated Plaintiff's medication "seems to be helping her a great deal with the ups and downs of living that most of us can deal with," but Plaintiff "does not take it with consistency." Tr. 265.

Mike Williams, Plaintiff's ex-husband, submitted a letter

dated May 26, 2013, in which he described Plaintiff's bipolar disorder during their nine-year marriage and throughout the 30 years that he has known her. Tr. 267. Mike Williams reported he noticed extreme mood swings in Plaintiff's youth, but it became clear as she grew older that it was the result of bipolar disorder. Tr. 267.

Finally, Nichole Williams, Plaintiff's daughter, submitted an undated letter in which she described Plaintiff's bipolar symptoms and mood swings throughout the course of Williams's childhood and youth, including instances of anger and depression. Tr. 268-70. Williams stated Plaintiff's bipolar medication, Abilify, is "the first medication I have ever seen to have a continual positive effect on her." Tr. 269. As to Plaintiff's prior employment, Williams stated Plaintiff "mentally couldn't handle holding a job while dealing [with] her . . . bipolar because it increased her rapid cycles and stress level." Tr. 269.

The ALJ rejected the lay testimony as a whole because the "testimony and statements appear to align with the claimant's allegations, which are not entirely credible." Tr. 26. The ALJ was correct to find the lay testimony largely mirrored Plaintiff's testimony, which the ALJ properly discredited. Many of the same reasons that the ALJ provided for rejecting Plaintiff's testimony apply with equally to the lay-witness

testimony, including the fact that each of the lay witnesses
describe longstanding limitations that existed while Plaintiff
maintained consistent employment. *See Valentine*, 574 F.3d at 694
("In light of our conclusion that the ALJ provided clear and
convincing reasons for rejecting Valentine's own subjective
complaints, and because Ms. Valentine's testimony was similar to
such complaints, it follows that the ALJ also gave germane
reasons for rejecting her testimony.").

On this record, therefore, the Court concludes the ALJ
provided legally sufficient reasons for rejecting the lay-witness
testimony.

## IV. **Step Four**

Plaintiff contends the ALJ erred at Step Four when he found
Plaintiff could perform her past relevant work as a housekeeper
because the standing and walking requirements of that job exceed
those described in the ALJ's assessment of Plaintiff's RFC.

Plaintiff's first contention is incorrect.  The VE testified
although the housekeeper occupation was performed at a medium-
exertional level as Plaintiff actually performed it, the
Dictionary of Occupational Titles defined the housekeeper
occupation as it is generally performed as light work consistent
with the ALJ's assessment of Plaintiff's RFC.  Tr. 68.  Thus,
Plaintiff has not demonstrated the VE's testimony was incorrect.

The ALJ, however, erred when he assessed Plaintiff's RFC

because the ALJ did not provide legally sufficient reasons for rejecting Dr. Perry's opinion.

On this record, therefore, the Court concludes the ALJ's finding at Step Four and alternative finding at Step Five were erroneous because those findings were based on an RFC that was not supported by substantial evidence in the record.

## V.   Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine whether a claimant is disabled under the Act. *Id*. at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are not any outstanding issues that must be resolved before a determination of disability can be made, and (3) it is

> clear from the record that the ALJ would be required to
> find the claimant disabled if such evidence were
> credited.

*Id.* The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

When the reviewing court finds the elements of the "credit-as-true" rule have been satisfied, however, the court may only remand for further proceedings if "an evaluation of the record as a whole creates serious doubt that the claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

There are outstanding issues here that must be resolved before a determination of disability can be made, and it is not clear from the record whether the ALJ would be required to find Plaintiff disabled if the ALJ credited the opinion of Dr. Perry.

Accordingly, on this record the Court concludes a remand for further proceedings consistent with this Opinion and Order is necessary for the Commissioner to reconsider Dr. Perry's opinion and to determine the effect that it has on the disability determination.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of

42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 22nd day of February, 2016.


                                    /s/ Anna J. Brown

                        _____
                        ANNA J. BROWN
                        United States District Judge